**SIGNED this 29th day of October, 2015**

/s/ Nicholas W Whittenburg
**Nicholas W. Whittenburg**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Dellon Binnon Ash, II** | ) | **No. 1:14-bk-12338-NWW** |
| | ) | **Chapter 11** |
| **Debtor** | ) | |

# M E M O R A N D U M

This case is before the court on the Debtor's Motion to Convert Case to a Case Under Chapter 13 filed on August 18, 2015. Having considered the undisputed material facts and the arguments and briefs of the parties, the court will deny the motion.

The pertinent facts are as follows. The debtor commenced this chapter 11 case on May 30, 2014. His Schedule D reflects $1,281,000.00 in secured debts, and it does not indicate that any of the debts is contingent, unliquidated, or disputed. The schedule also indicates that the "unsecured portions" of the secured debts total $438,943.00. One of those debts is a $700,000.00 obligation to Peoples Bank secured by real property located at 105 North Ocoee Street in Copper Hill, Tennessee, which the schedule indi-

cates is unsecured to the extent of $250,000.00. The Schedule E filed by the debtor lists priority claims totaling $3.00 and his Schedule F lists nonpriority unsecured debts totaling $853.00.

On July 14, 2014, Peoples Bank of East Tennessee filed a motion for relief from the automatic stay and, on August 29, 2014, the court entered an agreed order resolving that motion. Among other things, the order granted stay relief with respect to the Ocoee Street property. It also provides that "Peoples Bank shall not seek a deficiency against the Debtor following foreclosure of its deed of trust in the event that the Ocoee Property does not bring sufficient money to satisfy the debt owed." Peoples Bank thereafter foreclosed on that collateral.

The debtor proposed a chapter 11 plan on December 15, 2014, but that plan was ultimately withdrawn on July 16, 2015. Peoples Bank of East Tennessee filed a motion to dismiss this case or convert it to chapter 7 on July 21, 2015. At the hearing on that motion, the debtor requested 10 days to file a motion to convert the case to chapter 13. Peoples Bank did not oppose the request and, accordingly, on August 14, 2015, the court entered an order affording the debtor 10 days to file a motion to convert this case to a case under chapter 13 of the Bankruptcy Code and further provided that, if such a motion is timely filed, Peoples Bank's motion to dismiss or convert would be deemed moot and denied without prejudice. On August 8, 2015, the debtor filed the motion to convert presently before the court, pursuant to 11 U.S.C. § 1121(d). Peoples Bank responded that the debtor is not eligible to be a debtor under chapter 13 on account of the debt limits set forth in 11 U.S.C. § 109(e).

Section 1112(d) of the Bankruptcy Code authorizes the court to convert a case under chapter 11 to a case under chapter 13 only if the debtor requests conversion and the debtor has not received a discharge under 11 U.S.C. § 1141(d). As the debtor has not received a discharge and has voluntarily requested the conversion, § 1112(d) would appear to apply conversion would seem appropriate. However, subsection (f) of § 1112 provides that "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." Consequently, if a debtor is ineligible for chapter 13, he may not convert to that chapter from chapter 11.

Section 109(e) of the Bankruptcy Code sets forth the eligibility requirements for chapter 13. It provides, in pertinent part, that "[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated unsecured debts of less than $383,175 and noncontingent, liquidated, secured debts of less than $1,149,525 . . . may be a debtor under chapter 13 of this title." Those limits do apply when a debtor seeks to convert a case to chapter 13 from another chapter. *See Marrama v. Citizens Bank*, 549 U.S. 365, 372 (2007). The Sixth Circuit has held that, in determining whether the debtor satisfies the chapter 13 eligibility requirements, "a court should rely primarily upon the debtor's schedules checking only to see if the schedules were made in good faith." *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751, 756 (6th Cir. 1985). In so holding, the court noted that § 109(e) is analogous to the "amount in controversy" requirement when a plaintiff seeks to invoke a federal court's "diversity" jurisdiction, quoting Supreme Court authority holding that "the sum claimed by the plaintiff controls if the claim is apparently made in good faith. . . . The inability of plaintiff to recover an amount adequate to give the court jurisdiction does

not show his bad faith or oust the jurisdiction." *Id.* at 757 (quoting *St. Paul Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-90 (1938)). The court is to "look beyond the schedules only if the court determines that they were not filed in good faith." *In re Fuson*, 404 B.R. 872, 874 (Bankr. S.D. Ohio 2008).

Peoples Bank does not dispute the debtor's good faith in preparing and filing his schedules of liabilities. Rather, it relies on those schedules. Irrespective of whether the court treats the debts listed on Schedule D as fully secured or bifurcates those claims into secured and unsecured components, there is no question that the debts as listed in the schedules exceeded § 109(e)'s limits. If the claims are not bifurcated, Schedule D lists debts on the date of the filing of the petition of $1,281,000.00 – about $130,000 over the secured debt limit. If the claims are bifurcated,[1] the unsecured portions of the debts listed on Schedule D plus the debts listed on Schedules E and F total $439,799.00 – about $56,000 over the unsecured debt limit.

The debtor responds that Peoples Bank's foreclosure on the Ocoee Street property pursuant to the August 29, 2014, order reduced the amount of the debtor's secured debts (if they are not bifurcated) by $700,000 – to $581,000, which is well below the secured debt limit – and that the alleged forgiveness of the unsecured portion of the

---

[1] Although the Sixth Circuit has not addressed the issue, "a vast majority of courts, and all circuit courts that have considered the issue, have held that the unsecured portion of undersecured debt is counted as unsecured for § 109(e) eligibility purposes." *Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 972 (9th Cir. 2001) (citing *Brown & Co. Securs. Corp. v. Balbus (In re Balbus)*, 933 F.2d 246 (4th Cir. 1991); *Miller v. United States*, 907 F.2d 80 (8th Cir. 1990); *In re Day*, 747 F.2d 405 (7th Cir. 1984)).

bank's debt[2] reduced the amount of the debtor's unsecured debts (if secured debts are bifurcated) by $250,000 – to $189,799, which is well below the unsecured debt limit. order granting relief from the automatic stay. The court must determine, therefore, whether the postpetition event of foreclosure or the postpetition order precluding Peoples Bank from seeking a deficiency may be taken into consideration in evaluating Chapter 13 eligibility.

The conclusion that postpetition events should not normally factor into the determination of chapter 13 eligibility is grounded in the text of § 109(e) of the Bankruptcy Code, because it expressly provides that eligibility is to be determined by reference to secured and unsecured debts owing "on the date of the filing of the petition." The date of the filing of the petition commencing this case was May 30, 2014, which was prior to the foreclosure on the Ocoee Street property, prior to the entry of the August 29, 2014, order granting Peoples Bank relief from the stay, and prior to the filing of the pending motion to convert. As of the petition date, the debtor was ineligible for relief under chapter 13 because his debts exceeded the applicable debt limits according to the schedules, which speak as of the petition date.

Notwithstanding the plain language of § 109(e), the debtor asserts that events subsequent to the original petition and prior to the filing of the motion to convert should be considered when determining the debtor's chapter 13 eligibility. He essentially argues that the date of the filing of the motion to convert and not the date of the filing of the petition should be the date for measuring chapter 13 eligibility. However, the debt-

---

[2] The agreed order granting relief from the stay did not, as a technical matter, forgive the deficiency; rather, the bank agreed not to pursue a deficiency.

or's argument, in addition to ignoring the text of § 109(e), is inconsistent with § 348(a) of the Bankruptcy Code, which states, in pertinent part, that "[c]onversion of a case from a case under one chapter of this title to a case under another chapter of this title . . . does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." As the conversion of a case from chapter 11 to chapter 13 does not alter the date of the filing of the petition, it follows that the date for measuring the debtor's eligibility for chapter 13 must be the original petition date. *In re Rohl*, 298 B.R. 95, 99-100 (Bankr. E.D. Mich. 2003).[3] The reasoning of the Sixth Circuit in *Pearson* supports this conclusion.

The bankruptcy court in *Pearson* held that it should consider the original schedules, not amended schedules that increased the unsecured debt above the chapter 13 limit. The Sixth Circuit concurred:

> We therefore also agree with the bankruptcy judge, the district judge, and the rationale of the Supreme Court in the *St. Paul Indemnity* case that the fact that some later resolution of the conflict might render more certain the precise nature of the debt itself and the extent to which it is ultimately found to be secured is relatively immaterial in determining the debtors' financial condition and Chapter 13 eligibility on the date the petition was filed. The bankruptcy judge and the district judge both looked realistically to the state of the debtors' affairs as it reasonably appeared on the date of filing. We do not believe that the statute requires any more.

---

[3] The exception to § 348(a) found in subsection (b) (providing that "order for relief under this chapter" as used in certain specified sections means conversion) and the exception found in subsection (c) (providing that "Sections 342 and 365(d) of this title apply in a case that has been converted . . . as if the conversion order were the order for relief") do not apply here. Indeed, § 348(a) governs only the *effect* of conversion, and so does not come into play until conversion takes place. Nevertheless, its general rule that conversion is not equivalent to the filing of a petition is relevant in construing § 109(e)'s language "on the date of the filing of the petition."

*Pearson*, 773 F.2d at 758.[4]

The following year, the United States District Court for this district was asked to dismiss preference proceedings because the debtor, having been converted into an industrial bank pursuant to its chapter 11 plan of reorganization and later merged into another bank, was no longer eligible to be a chapter 11 debtor. The court noted *Pearson*'s holding that "events occurring after the filing of a Chapter 13 petition did not deprive the Bankruptcy Court of jurisdiction," and held that "[t]here appears to be no substantive reason why this Court should treat a Chapter 11 petition differently from a Chapter 13 petition. This court, therefore, holds that SIBC was an eligible debtor at the time the Chapter 11 petition was filed on March 10, 1983, and that subsequent changes in its corporate status had no effect upon the ability of the Trustee to bring these suits for preferential transfers." *DuVoisin v. Anderson (In re S. Indus. Banking Corp.)*, 59 B.R. 978, 986 (E.D. Tenn. 1986).

This court also finds decisions from sister bankruptcy courts persuasive. For example, in *In re Hansen*, 316 B.R. 505 (Bankr. N.D. Ill. 2004), a chapter 7 debtor sought to convert his case to chapter 13 after a large debt had been forgiven postpetition. The court disregarded the forgiveness in holding that the debtor was ineligible for chapter 13 relief because "Section 109(e) states plainly that eligibility to proceed under chapter 13

---

[4] The debtor attempts to distinguish *Pearson* because the consideration of the postpetition events in that case would have *destroyed* chapter 13 eligibility that existed at the time the petition was filed while, in this case, postpetition events would *create* chapter 13 eligibility that did not exist at the time the petition was filed. *Pearson* simply does not make that distinction, and this court will not do so, particularly considering the plain language of § 109(e) requiring that the debts fall with in the chapter 13 debt limits "on the date of the filing of the petition."

depends on what the debtor owes 'on the date of the filing of the petition.' Post-petition changes in what the debtor owes are therefore beside the point." *Id.* at 509 (citing *In re Stairs*, 307 B.R. 698, 701 (Bankr. D. Colo. 2004); *In re Rohl*, 298 B.R. 95, 100 (Bankr. E.D. Mich. 2003)). In *Stairs*, the court held the debtor ineligible to convert to chapter 13 even though postpetition payments by a nondebtor reduced a large debt by 75%. In *Rohl*, the court held the debtor ineligible to convert to chapter 13 even though certain scheduled debts were no longer owing as a result of postpetition events. *See also In re Faulhaber*, 269 B.R. 348, 353 (Bankr. W.D. Mich. 2001) (noting that "*Pearson* also prohibits the bankruptcy court from taking into consideration events which occurred subsequent to the petition date in evaluating the debtor's eligibility for Chapter 13 relief.").

This court agrees that postpetition events may not be taken into account in determining chapter 13 eligibility. First and foremost, the statute itself provides that eligibility is to be determined "on the date of the filing of the petition." Thus, both the Sixth Circuit and our district court have held that postpetition events do not affect a debtor's eligibility to be a debtor under a particular chapter. Just as the Supreme Court has made clear that a good faith complaint controls whether a federal court has diversity jurisdiction, whether or not the claim actually turns out to exceed the jurisdictional amount, so too schedules filed in good faith reflecting the state of the debtor's financial affairs on the date of the filing of the petition control whether a debtor is eligible for chapter 13 relief, whether or not the claims actually turn out to be different than stated in the schedules. The court holds, therefore, that the satisfaction of Peoples Bank of East Tennessee's secured debt through a postpetition foreclosure and its alleged forgiveness of the deficiency remaining after the foreclosure have no bearing on the debtor's eligibil-

ity to be a debtor under chapter 13 of the Bankruptcy Code as of the date of filing of his chapter 11 petition.

For the foregoing reasons, the court will enter an order denying the debtor's motion to convert his chapter 11 case to chapter 13.[5]

# # #

---

[5] Since the court holds that postpetition events are not taken into account in determining eligibility to convert a case to chapter 13, it need not consider factual and legal issues relating to the effect of the foreclosure and the agreed order granting relief from the automatic stay. Such issues include whether the bank was left with a deficiency after the foreclosure and, if so, how large the deficiency is and whether it would need to be considered in applying § 109(e)'s unsecured debt limit considering that the bank agreed not to seek a deficiency.